UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                    :
AZIZ GILLIARD,                      :
                                    :
        Petitioner,                 :    Civ. No. 16-2188 (NLH)
                                    :
    v.                              :    OPINION
                                    :
STEVEN JOHNSON,                     :
THE ATTORNEY GENERAL FOR THE        :
STATE OF NEW JERSEY,                :
                                    :
        Respondents.                :
_____:

APPEARANCES:
Aziz Gilliard, No. 645782/707412-C
New Jersey State Prison
PO Box 861
Trenton, NJ 08625
    Petitioner pro se

John J. Santoliquido
Atlantic County Prosecutor's Office
4997 Unami Boulevard
Mays Landing, NJ 08330
    Counsel for Respondents

HILLMAN, District Judge

    Petitioner Aziz Gilliard ("Petitioner"), a prisoner

presently incarcerated at New Jersey State Prison in Trenton,

New Jersey, has filed a petition for a Writ of Habeas Corpus

pursuant to 28 U.S.C. § 2254 (the "Petition").  ECF No. 1.  By

order of the Court, ECF No. 2, Respondents Steven Johnson and

the Attorney General for the State of New Jersey ("Respondents")

filed an answer to the Petition (the "Answer"), ECF No. 7.

Petitioner filed a reply to the Answer (the "Reply").  ECF No.

1

12.  The Petition is ripe for disposition.  For the reasons

stated below, the Petition will be denied.

**I.  BACKGROUND**

In an unreported opinion affirming Petitioner's conviction

and sentence, the New Jersey Superior Court, Appellate Division,

on direct appeal, provided the following summary of the factual

background of Petitioner's case:

> Evidence at trial disclosed that shortly
> before midnight on June 18, 2006, after a
> father's day barbecue, Kawan Hill was shot in
> the head at close range and killed in a
> courtyard of the Stanley Holmes Village
> housing complex in Atlantic City (Village).
> Uniformed officers Brian Hurley and Charles
> Heintz were on foot patrol that evening when
> they heard "several shots" and ran in the
> direction of the shots.  Heintz testified that
> he heard roughly eight shots in total:  a
> single shot followed by a volley of three or
> four additional shots, then a second such
> volley.
>
> . . .
>
> Once at the scene, the officers discovered a
> large gathering of people standing around a
> body, which lay in a pool of blood. One person
> at the scene said that he saw two men flee
> immediately after the shooting.  Police
> recovered multiple shell casings and unfired
> bullets, including three .45 shell casings and
> two live .45 rounds, a .40 caliber shell
> casing, and a bullet fragment from a .38
> caliber bullet.

State v. Gilliard, Indictment No. 07-01-0239, 2011 WL 3364406,

at *2 (N.J. Sup. Ct. App. Div. Aug. 5, 2011).  Immediately

following the shooting, officers apprehended two potential

suspects who had fled the scene, but it was determined that neither had been the shooter. Id.

During the course of the investigation, Delisha DeBerry was identified as an eyewitness to the shooting. Id. at *3. Detective Michael Mattioli interviewed DeBerry, "who was reluctant to talk about the events, expressing concern about being considered a snitch." Id. She eventually, however, gave a recorded statement recounting the events that led to the shooting:

> She said that, following an argument among several men playing dice, "Aziz" pulled out a gun and fired it into the air. Aziz then shot Hill in the head, with DeBerry standing less than three feet away. DeBerry told Detective Mattioli that she had known Aziz for roughly six months. She described him as having a missing front tooth and a tattoo with the initials D.O.M. on his right hand. DeBerry also told the detective that she knew Aziz's brother Fuquan and knew where Aziz lived. Finally, DeBerry told Mattioli that she also knew that Aziz had previously been in prison and that he had been released roughly eighteen months before this incident. She identified defendant's gun as an automatic, not a revolver.

Id.

Once Detective Mattioli obtained DeBerry's statement, he prepared a photo array, containing photos of Petitioner and five other individuals, and arranged for an officer with no knowledge of the case to present the array to DeBerry. Id.

Later that same day, [Sergeant Clark] Manley

met DeBerry at the prosecutor's office and
showed her the six photographs, one at a time.
After viewing all six of the photographs,
DeBerry asked to see them a second time. The
photos were re-numbered, randomly re-shuffled
and individually shown to her again. After
seeing the photos a second time, DeBerry
identified two men: defendant and a person
named Marcus Hunt, who was in jail at the time
of the shooting. When Mattioli asked DeBerry
why she now indicated that there were two
shooters, he noticed that she appeared nervous
and shook, and she told him that she was afraid
and did not want to be a witness. DeBerry then
pointed to defendant's photo and stated that
he was the sole shooter. Prior to trial, the
court conducted a Wade hearing and determined
that DeBerry's identification of defendant was
admissible.

Id.

A warrant was issued for Petitioner's arrest in August 2006
based on DeBerry's statement.  Id. at *6.  In September 2006,
law enforcement executed search warrants at the homes of
Petitioner's mother and girlfriend that revealed that Petitioner
"sometimes stayed at both locations."  Id.  Petitioner was not
at either residence when the warrants were executed.  Id.  Law
enforcement circulated wanted posters with Petitioner's name and
photograph and a local paper published an article stating that
the prosecutor's office was searching for the defendant in
connection with a homicide.  Id.

Petitioner was not apprehended until September 12, 2007
when he was arrested on a weapons charge using an alias in
Baltimore, Maryland.  Id.  Baltimore police ran a fingerprint

analysis that revealed Petitioner's identity and the outstanding New Jersey arrest warrant. Id. Petitioner was indicted on charges of (1) first-degree murder, N.J.S.A. § 2C:11-3a(1)(2); (2) second-degree possession of a weapon for an unlawful purpose, N.J.S.A. § 2C:39-4a; (3) third-degree unlawful possession of a weapon, N.J.S.A. § 2C:39-5b; (4) fourth-degree aggravated assault, N.J.S.A. § 2C:12-1b(4); (5) third-degree endangering of an injured victim, N.J.S.A. § 2C:12-1.2; and (6) second-degree possession of a weapon by a convicted person, N.J.S.A. § 2C:39-7. ECF No. 7-18.

Petitioner was transferred from Maryland to New Jersey for trial pursuant to the Interstate Agreement on Detainers (IAD), N.J.S.A. § 2A:159A-1 to -15. Gilliard, 2011 WL 3364406, at *6. A bifurcated trial was held in September 2009. Id.

Shortly before trial, Petitioner sought a continuance to procure two witnesses. Id. at *8. Once of those witnesses was Maurice Pettway, who gave a statement to law enforcement, nearly two years after the shooting, in which he stated that Petitioner did not shoot Hill and only shot into the air three times. Id. Pettway identified Hassan Irizarry as the shooter. Id. Nevertheless, "Pettway refused to appear to testify despite acknowledging that he had been subpoenaed to do so." Id.

At trial, the State called several eyewitnesses to the shooting, many of whom recanted the statements they had given to

police.  DeBerry was one of the witnesses who recanted, testifying "that she 'blanked out' right after the shooting and, after passing out, was taken to the hospital."  Id. at *3. DeBerry additionally testified that she lied about Petitioner being the shooter.  Id.  DeBerry's recorded statement was admitted at trial as a prior inconsistent statement.  Id. at *4.

Sharif Whitlock also testified at trial, but he did not recant his statement.  Id. at *5.  Sharif testified that

> he did not actually see defendant shoot Hill,
> but that he turned immediately after hearing
> a shot and saw defendant standing next to Hill
> with his arm extended and what he believed to
> be an automatic handgun in his hand. He
> testified that he saw Hill grab his head after
> being shot. Whitlock also testified that
> various other people then started shooting,
> but only after defendant shot Hill. He
> admitted that he had fired at defendant
> following the shooting of Hill, and that
> defendant and another man, Hassan Irizarry,
> fired their guns as they fled the scene.
> Whitlock testified that he was drunk and high
> at the time of the events. Like other
> witnesses, he also acknowledged that he did
> not want to testify and was present only
> because he had been subpoenaed.

Id.

The jury acquitted Petitioner of the charge of murder but convicted him of the lesser-included offense of aggravated manslaughter.  ECF No. 7-19.  The jury also convicted Petitioner on the charges of fourth-degree aggravated assault, second-degree possession of a weapon for an unlawful purpose; fourth

degree aggravated assault; and second-degree certain persons not to have any weapons. Id.[1] Petitioner was sentenced to a thirty-year term of imprisonment, subject to the No Early Release Act, N.J.S.A. § 2C:43-7, for aggravated manslaughter[2] and a consecutive ten-year term on the certain persons not to have a weapon offense. Id.

Petitioner filed an appeal of his conviction and sentence in the New Jersey Superior Court, Appellate Division. ECF No. 7-20. The Appellate Division affirmed his conviction on August 5, 2011, Gilliard, 2011 WL 3364406, and the New Jersey Supreme Court denied certification on March 14, 2012, ECF No. 7-22.

Petitioner thereafter filed a petition for post-conviction relief (the "PCR Petition"), which was denied on the record on May 9, 2013. ECF Nos., 7-17, 7-26. Petitioner appealed the denial of his PCR Petition to the Appellate Division, who affirmed the Superior Court's decision on July 17, 2015. State v. Gilliard, A-0476-13T4, 2014 WL 10100161 (N.J. Sup. Ct. App. Div. July 17, 2015). Petitioner filed a petition for certification to the New Jersey Supreme Court, which was denied

---

[1]     The charge of endangering an injured victim was dismissed at trial by motion of the State. Gilliard, 2011 WL 3364406, at *6.

[2]     The aggravated assault and unlawful possession of a weapon charges merged with aggravated manslaughter for sentencing purposes. ECF No. 7-19.

on November 16, 2015. ECF No. 7-32.

Petitioner filed the instant § 2254 petition on April 10, 2016. ECF No. 1. Petitioner raises the following grounds for relief:

1. Petitioner is entitled to issuance of a writ of habeas corpus vacating his conviction because the state court failed to grant a new trial when the trial court gave a flight instruction thereby interjecting highly prejudicial facts that denied him a fair trial in violation of the Fifth and Fourteenth Amendments of the United States Constitution.

2. Petitioner is entitled to issuance of a writ of habeas corpus vacating his conviction because the state court failed to grant a new trial when the trial court failed to grant a continuance to allow the defense an opportunity to produce a key witness.

3. Petitioner is entitled to issuance of a writ of habeas corpus vacating his conviction because the state court failed to grant a new trial when the trial court admitted the out-of-court identification of the defendant by a witness in a highly suggestive environment.

4. Petitioner is entitled to issuance of a writ of habeas corpus vacating his conviction because the state court failed to hold an evidentiary hearing to determine whether trial counsel provided ineffective assistance when he failed to call Zack Duncan, who was an eyewitness to the crime and would have exonerated Petitioner, to testify.

5. Petitioner is entitled to issuance of a writ of habeas corpus vacating his conviction because the state court failed to hold an evidentiary hearing to determine whether trial counsel provided ineffective assistance when he failed to present a witness who would have affirmatively supported a third-party guilt defense.

6. Petitioner is entitled to issuance of a writ of habeas corpus vacating his conviction because the state court failed to hold an evidentiary hearing to determine

whether trial counsel provided ineffective assistance
when he failed to discuss the ramifications associated
with the decision whether or not Petitioner should
have testified on his own behalf.

ECF No. 1, at 6-14.

Respondents filed an answer to the Petition arguing that
Petitioner's claims are meritless.  ECF No. 7.

## I.     STANDARD OF REVIEW

A petition for writ of habeas corpus pursuant to 28 U.S.C.
§ 2254 is the proper mechanism for a state prisoner to challenge
the fact or duration of his confinement where the petitioner
claims his custody is in violation of the Constitution or the
laws of the United States. See 28 U.S.C. § 2254(a); Cullen v.
Pinholster, 563 U.S. 170, 181 (2011); Preiser v. Rodriquez, 411
U.S. 475, 498-99 (1973).  A habeas petitioner bears the burden
of establishing his entitlement to relief for each claim
presented in the petition. See Harrington v. Richter, 562 U.S.
86, 98 (2011).

The standard used in reviewing habeas claims under § 2254
depends on whether those claims have been adjudicated on the
merits by the state court.  If they have not been adjudicated on
the merits, the Court reviews de novo both legal questions and
mixed factual and legal questions. See Appel v. Horn, 250 F.3d
203, 210 (3d Cir. 2001).  If the state court adjudicated the
claim on the merits, then 2254(d) limits the review of the state

court's decision as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding . . . .

28 U.S.C. § 2254(d). The statute is clear. If a claim has been adjudicated on the merits in state court,[3] this Court has "no authority to issue the writ of habeas corpus unless the [state court's] decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined

---

[3] "[A] claim has been adjudicated on the merits in State court proceedings when a state court has made a decision that finally resolves the claim based on its substance, not on a procedural, or other, ground." Lewis v. Horn, 581 F.3d 92, 100 (3d Cir. 2009)(quoting Thomas v. Horn, 570 F.3d 105, 117 (3d Cir. 2009)). "Section 2254(d) applies even where there has been a summary denial." Pinholster, 563 U.S. at 187. "In these circumstances, [petitioner] can satisfy the 'unreasonable application' prong of § 2254(d)(1) only by showing that 'there was no reasonable basis' for the [state court's] decision." Id. (quoting Harrington v. Richter, 562 U.S. 86, 98 (2011); see also Johnson v. Williams, 568 U.S. 289, 301 (2013) ("When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted.").

by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Parker v. Matthews, 567 U.S. 37, 40 (2012) (quoting 28 U.S.C. § 2254(d)).

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). Clearly established law "refers to the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. 362, 412 (2000). A court must look for "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." Lockyer v. Andrade, 538 U.S. 63, 71-72 (2003). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court,' [and] therefore cannot form the basis for habeas relief under AEDPA." Parker, 567 U.S. at 48-49 (quoting 28 U.S.C. § 2254(d)(1)).

A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court applies a rule that "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a [different result.]"

*Williams*, 529 U.S. at 405–06.  Under the " 'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413.  "[A]n unreasonable application of federal law," however, "is different from an incorrect application of federal law." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Williams*, 529 U.S. at 410).

## II.  DISCUSSION

### a. Flight Instruction

In his first ground for habeas relief, Petitioner claims that his federal due process rights were violated by the trial court's provision of a flight charge to the jury.  Petitioner contends that the charge was not supported by the facts of the case and "reveal[ed] otherwise not known other crimes evidence about the Petitioner to the jury."  ECF No. 1, at 6.

At the close of evidence, the trial court instructed the jury as follows:

> Now, there has been evidence and testimony in this case from which you may infer that the defendant may have fled shortly after the commission of the offense.  The defendant denies any flight.  The question is whether defendant may have fled after the commission of the crime is a question of fact for you. Mere departure from a place where a crime has been committed does not constitute flight.

If you find that the defendant fearing that an accusation or arrest would be made against him on the charge involved in the indictment took refuge in flight for the purpose of evading the accusation or arrest on that charge, then you may consider such flight in connection with all the other evidence in the case as an indication of proof of consciousness of guilt. Flight may only be considered as evidence of consciousness of guilt if you should determine that defendant's purpose in leaving the area was to evade accusation or arrest for the offense charged in the indictment.

If after a consideration of all the evidence, and you've heard evidence about this, such as I recall, and again your memory is what controls, that the defendant was interviewed shortly after the incident in Atlantic County; then search warrants were issued for his mother's house, and his girlfriend's house, and then defendant was then in contact with an officer in Baltimore, Maryland and gave an another name; all of those things can be taken into account, okay. And after you consider all of those things, if you find that the defendant fearing an accusation or arrest would be made on this charge took refuge in flight to evade that accusation or arrest, then you may consider the flight with all the other evidence in the case as an indication or proof of consciousness of guilt. It is for you to decide whether or not all the evidence on this issue shows a consciousness of guilt and a weight to be given such evidence in light of all the evidence in the case.

ECF No. 7-14, at 102-03. Defense counsel objected to the charge, arguing that there was no evidence presented that Petitioner was evading arrest for the murder of Hill. ECF No. 7-12, at 35. Petitioner challenged the flight charge on direct appeal to the Appellate Division, who held that the charge was

fully supported by the record.  <u>Gilliard</u>, 2011 WL 3364406, at
*6-8.

The Supreme Court has made clear that "the fact that [a
jury] instruction was allegedly incorrect under state law is not
a basis for habeas relief." <u>Duncan v. Morton</u>, 256 F.3d 189, 203
(3d Cir. 2001)(quoting <u>Estelle v. McGuire</u>, 502 U.S. 62, 71-72
(1991)).  For an incorrect jury instruction to warrant habeas
relief, the instruction must have "by itself so infected the
entire trial [such] that the resulting conviction violates due
process." <u>Id.</u> (quoting <u>Henderson v. Kibbe</u>, 431 U.S. 145, 154
(1977)).  It is not enough that the instruction is merely
"undesirable, erroneous, or even universally condemned." <u>Id.</u>

To determine the effect of an allegedly erroneous jury
instruction on the validity of a petitioner's conviction, courts
cannot judge the instruction "in artificial isolation," but must
consider it "in the context of the overall charge." <u>Cupp v.
Naughten</u>, 414 U.S. 141, 146-47 (1973).

Petitioner is not entitled to habeas relief on this ground
as the Appellate Division's decision was neither unreasonable
nor contrary to well-established federal law.  Petitioner points
to no Supreme Court precedent that prohibits the use of a flight
charge where it is supported by the evidence.  Indeed, it is
well established in both New Jersey and in federal court that
"[e]vidence of a defendant's flight after a crime has been

committed is admissible to prove his consciousness of guilt."
United States v. Green, 25 F.3d 206, 210 (3d Cir. 1994)
(alteration in original)(quoting United States v. Pungitore, 910
F.2d 1084, 1151 (3d Cir. 1990)); State v. Ingram, 951 A.2d 1000,
1014 (N.J. 2008). And, even if the charge was given in error it
was not sufficiently egregious to constitute a violation of his
federal due process rights. Accordingly, relief on this claim
is denied.

### b. Continuance to Procure Witness

Petitioner next asserts that the trial court's denial of
his request for a continuance to produce Maurice Pettway as a
witness deprived him of his rights under the Compulsory Process
Clause.

Shortly before trial was scheduled to begin, Petitioner
moved to adjourn trial to enable counsel to procure two
allegedly key witnesses. ECF No. 7-4, at 4. One of those
witnesses was Pettway, who Petitioner claims "had previously
given a statement to the Atlantic County Prosecutor's officer
that he witnessed the crime and that it was another individual
by the name of Hassan Irizarry who was the perpetrator of the
crime." ECF No. 1, at 8. The trial court denied the motion for
several reasons. ECF No. 7-4. First, the trial court noted that
the matter was pending pursuant to the Interstate Agreement
Detainer ("IAD"), which imposed a deadline by which trial needed

to occur. Id. at 14-15. Prior to this motion, Petitioner had refused to waive the IAD. Id. The trial court also voiced concern that witnesses were being intimidated not to testify and that to prolong trial would prolong the "mental anguish" for those witnesses. Id. at 16-18.

Petitioner's counsel continued to search for Pettway to arrange for his testimony and a subpoena was issued for him to appear. Gilliard, 2011 WL 3364406, at *9. Pettway acknowledged the subpoena but refused to comply. Id. The trial court granted an afternoon adjournment of trial to produce Pettway but defense counsel was not successful. Id.

On direct appeal, the Appellate Division rejected this claim. Id. at *8-11. The panel held that the trial court did not abuse its discretion in denying the motion for an adjournment, noting that Pettway's statement "was so at odds with facts established by unimpeachable evidence that it could not have been credited by the jury." Id. at 10-11. Moreover, the Appellate Division noted that a short adjournment of trial was permitted to assist with the production of Pettway, but Pettway still refused to appear. Id.

The Sixth Amendment of the United States Constitution guarantees "the criminally accused the right to offer testimony of favorable witnesses and 'to have compulsory process for obtaining witnesses in his favor.'" United States v. Cruz-

Jimenez, 977 F.2d 95, 100 (3d Cir. 1992)(quoting U.S. Const.
Amend. VI); see also Washington v. Texas, 388 U.S. 14, 19
(1967). "The Compulsory Process clause protects the
presentation of the defendant's case from unwarranted
interference by the government, be it in the form of an
unnecessary evidentiary rule, a prosecutor's misconduct, or an
arbitrary ruling by the trial judge." Gov't of V.I. v. Mills,
956 F.2d 443, 445 (3d Cir. 1992).

A defendant's rights under the Compulsory Process clause
are not, however, absolute. Id. A defendant may only prevail on
a claim for violation of the Compulsory Process clause where he
can show: "(1) he was deprived of the opportunity to present
evidence in his favor; (2) the excluded testimony would have
been material and favorable to his defense; and (3) the
deprivation was arbitrary or disproportionate to any legitimate
evidentiary or procedural purposes." Cruz-Jimenez, 977 F.2d at
100; see also Washington, 388 U.S. at 23 (holding that the state
denied defendant his right to compulsory process where it
"arbitrarily denied him the right to put on the stand a witness
who was physically and mentally capable of testifying to events
that he had personally observed, and whose testimony would have
been relevant and material to the defense").

The Appellate Division's decision was neither contrary to
nor a reasonable application of this established federal

precedent.  First, the trial court's denial of Petitioner's motion for an adjournment did not deprive him of calling Pettway as a witness at trial — Pettway himself refused to appear despite acknowledging the subpoena issued for his testimony.

Second, the testimony Petitioner alleges Pettway would have offered was directly contrary to the facts that had been established by unimpeachable evidence at trial and, therefore, was not material and favorable to Petitioner.  For example, Pettway stated that the victim was shot on the right side of his head.  However, the medical examiner testified that the autopsy showed the fatal bullet entered the left rear of the victim's head.  Also, Pettway stated that the shooting occurred between 9:00 p.m. and 9:30 p.m. whereas police testimony established the shooting occurred around midnight.  *Gilliard*, 2011 WL 3364406, at *8.

Finally, the trial court did not act arbitrarily in denying the motion for an adjournment.  The trial was proceeding under an IAD which required the trial to take place before a certain date.  An adjournment would have required an extension of the IAD, to which Petitioner had previously refused to consent.  Accordingly, Petitioner is denied habeas relief on this claim.

### c. Out of Court Identification

Petitioner next claims that he is entitled to habeas relief

based on the trial court's admission at trial of DeBerry's out-of-court identification of him as the shooter. Petitioner argues that the procedure used by law enforcement was impermissibly suggestive and violated the Attorney General of New Jersey's guidelines for eyewitness identifications.

As set forth in the Appellate Division's decision, DeBerry's eyewitness identification was conducted as follows:

> At the <u>Wade</u> hearing in this case, [Detective] Mattioli testified that in compliance with the Attorney General's Guidelines on photo lineups, he had Sergeant Manley be the photo lineup administrator "because he was unfamiliar with the case." Mattioli. . . then told DeBerry that they were "trying to identify the person that did this" and that there was "a series of photographs that Sergeant Manley's going to show you to see if you can make such an identification." If she identified one of the people, she should let Manley know. Mattioli numbered each photo on the back before giving the six to Manley, after which Manley showed them individually to DeBerry. When she asked to see them again, Manley first gave them back to Mattioli, who reordered and renumbered them, and then returned them to Manley with instructions to repeat the process. A short time later, Manley informed Mattioli that she had identified two people.
>
> Mattioli then entered the room where the identification was taking place and asked DeBerry why he had not told them that there was a second shooter, after which "she became very nervous physically, grasping her hands, rubbing her—rubbing her hands, looking at the ground. She was shaking . . . ." DeBerry then said she was scared, and when Mattioli asked why she said that she did not want to be a witness. Mattioli then held up both of the

> signed photos and, indicating the photo of
> Hunt, told her that he could not have been
> present. After that, DeBerry identified
> defendant as the only shooter.

Gilliard, 2011 WL 3364406, at *11.

Petitioner alleges that the identification procedure utilized was impermissibly suggestive because the identification was not properly memorialized in accordance with the New Jersey Attorney General's Guidelines on photo lineup procedures. ECF No. 1, at 9-10. Petitioner raised this claim on direct appeal, and it was rejected by the Appellate Division:

> Here, in finding the identification reliable,
> the trial court analyzed the facts of the
> matter specifically as Manson requires,
> determining that DeBerry was focused on events
> as the result of defendant's prior shot into
> the air, from her vantage point she had an
> opportunity to view what was taking place, she
> had accurately described the defendant's
> physical appearance prior to the
> identification, and she made the
> identification within a short time of the
> events at issue. We find no error in his
> analysis.

Id. at *12.

In Simmons v. United States, 390 U.S. 377, 384 (1968), the Supreme Court held that a conviction based on an out-of-court photographic identification will be set aside only if "the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Indeed, even if a photographic

20

identification procedure is suggestive, a reviewing court must ask whether "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive. Neil v. Biggers, 409 U.S. 188, 199 (1972). The Supreme Court has set forth certain factors to consider in making that determination, including: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199-200; see also Manson v. Brathwaite, 432 U.S. 98, 114 (1977).

Petitioner raises two arguments as to why DeBerry's out-of-court identification should not have been admitted: (1) it was not properly memorialized in accordance with the Attorney General Guidelines and (2) "one of the officers confront[ed] Ms. DeBerry that she picked an individual that could not have been at the scene." Petitioner cannot obtain relief under his first theory because a violation of State procedure is insufficient to show that his federal rights were violated. See Estelle, 502 U.S. at 71-72.

Moreover, the Appellate Division's decision affirming the admission of the identification was neither unreasonable nor

contrary to any established federal law.  The trial court held a hearing pursuant to United States v. Wade, 388 U.S. 218 (1967) to determine whether DeBerry's identification of Petitioner was admissible at trial.  After hearing testimony from the officer that conducted the identification procedure and the investigating detective, the trial court ruled the identification was admissible. ECF No. 7-3, at 34-82.  The Appellate Division affirmed that ruling, holding that the trial court properly applied the factors set forth by the Supreme Court in Neil and Manson.

The fact that Sergeant Mattioli told DeBerry that one of the people she identified as a shooter was in prison does not render the identification inadmissible.  An inquiry into the reliability of an identification is based on the totality of the circumstances. Neil, 409 U.S. at 199.  DeBerry identified Petitioner as the shooter before she was told one of the people in the photo lineup could not have been present at the shooting. Moreover, DeBerry had accurately described Petitioner's physical appearance prior to identifying him as the shooter, she made the identification within a short time after the shooting occurred, and she had been present at the scene and observed the shooting as it unfolded.  These factors demonstrate that the identification was reliable, and the procedure utilized was not impermissibly suggestive.  Accordingly, habeas relief is denied

on this claim.

### d. Ineffective Assistance of Counsel

Finally, Petitioner brings three claims asserting ineffective assistance of counsel.[4]  The Sixth Amendment of the United States Constitution provides: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI.  The Supreme Court has recognized that "the right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984)(quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  A showing of ineffective assistance of counsel requires two components to succeed. Id. at 687.  The two requisite proofs are as follows: (1) a defendant must show that counsel's performance was deficient; and (2) the defendant must show prejudice. Id.  The analysis is underpinned by an understanding that counsel's role is to ensure the production of a reliably just result with the

---

[4]    Petitioner frames each of his ineffective assistance of counsel claims as seeking relief based on the trial court's failure to hold an evidentiary hearing.  However, because such claims are based on state law, they are not cognizable on a motion pursuant to § 2254. Estelle, 502 U.S. at 66 (observing that "federal habeas corpus relief does not lie for errors of state law" (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990))).  Nevertheless, because Petitioner brings this motion pro se and the Court must construe pro se pleadings liberally, United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007), the Court will construe the claims are seeking relief because of ineffective assistance of counsel.

adversarial process of trial.  Id.

When a convicted defendant complains of deficient performance, the defendant's burden of proof is to show that the conduct of counsel fell below an objective standard of reasonableness. Id. at 688.  Hence, [j]udicial scrutiny of counsel's performance must be highly deferential." Id. at 689. To combat the natural tendency for a reviewing court to speculate whether a different strategy at trial may have been more effective, the Supreme Court has "adopted the rule of contemporary assessment of counsel's conduct." Maryland v. Kulbicki, 136 S. Ct. 2, 4 (2015)(quoting Lockhart v. Fretwell, 506 U.S. 364, 372 (1993)).  Thus, when reviewing for an ineffective assistance of counsel, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Woods, 135 S. Ct. at 1375 (quoting Strickland, 466 U.S. at 689); cf. United States v. Chronic, 466 U.S. 648, 659 (1984) (holding that courts may presume deficient performance and resulting prejudice if a defendant "is denied counsel at a critical stage of his trial").

Because Petitioner's ineffective assistance of counsel claims are raised through a § 2254 petition, federal "review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" Woods, 135 S. Ct. at 1376 (quoting Burt v. Titlow, 134 S. Ct.

10, 13 (2013)); see also Cullen, 563 U.S. at 190 ("[R]eview of
the [State] Supreme Court's decision is thus doubly
deferential."); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009)
("[D]oubly deferential judicial review applies to a Strickland
claim evaluated under the § 2254(d)(1) standard . . . .");
Yarborough, 541 U.S. at 6 ("Judicial review of a defense
attorney ... is therefore highly deferential--and doubly
deferential when it is conducted through the lens of federal
habeas.").  Indeed, "[w]hen § 2254(d) applies, the question is
not whether counsel's actions were reasonable.  The question is
whether there is any reasonable argument that counsel satisfied
Strickland's deferential standard."  Harrington, 562 U.S. at
105.

As to proving prejudice under Strickland, "actual
ineffectiveness claims alleging a deficiency in attorney
performance are subject to a general requirement that the
defendant affirmatively prove prejudice." Id., 466 U.S. at 693.
To succeed on this proof, a defendant must show "a reasonable
probability that, but for counsel's unprofessional errors, the
result of the proceeding would have been different."  Hinton v.
Alabama, 134 S. Ct. 1081, 1088 (2014) (quoting Padilla v.
Kentucky, 559 U.S. 356, 366 (2010)).  A reasonable probability
is a probability which sufficiently undermines confidence in the
outcome of the trial. Strickland, 466 U.S. at 694.

### i. Failure to Call Zach Duncan as a Witness

Petitioner first claims that his counsel was ineffective for failing to call Zack Duncan, apparently an eyewitness to the shooting, at trial. ECF No. 1, at 11. Petitioner alleges that, at some point prior to trial, Duncan sent Petitioner a letter which stated:

> A yo Brother Abdul Aziz, I don't know you that well but I was taken too [sic] the prosecutor's office and they ask me about a murder of Bosheed who was my best friend. They said they was told I DJ that night but I told them nothing even though I did DJ that night. I saw you at my DJ Table when shots went off. I no [sic] you didn't do it young man, I just didn't want to talk to them.

ECF No. 7-24, at 122. The letter is undated. Id. Petitioner claims that his counsel was constitutionally deficient by not interviewing Duncan or calling him at trial.

The PCR Court rejected this claim, explaining that it is clear from the letter that Duncan did not want to testify and that to not use the letter did not "come close in [his] view to establishing anything under Strickland." ECF No. 7-17, at 16. The Appellate Division affirmed, determining that the letter was nothing more than a "bald allegation" because it was unsupported by any affidavit or certification from Duncan that he would have testified in accordance with the letter or that counsel did not, in fact, investigate the letter. Gilliard, 2014 WL 10100161, at *4-5.

Petitioner has failed to demonstrate how he was prejudiced by counsel's action. Demonstrating prejudice under Strickland "requires more than just a 'conceivable' likelihood of a different result." Grant v. Lockett, 709 F.3d 224, 235 (3d Cir. 2013). Where a petitioner's ineffective assistance claim is based on the alleged failure to call a witness, he cannot merely speculate as to how the witness would have testified at trial. Duncan v. Morton, 256 F.3d at 201-02. He must present a sworn statement as to the witness's proposed testimony. See id.; Tolentino v. United States, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014) ("Here, Tolentino's failure to include a sworn statement regarding the nature of [the witness's] proposed testimony is fatal to making a prima facie showing of prejudice."). Petitioner has not presented any sworn statement or testimony from Duncan as to what his testimony would have been at trial. Absent such evidence, Petitioner cannot meet the Strickland prejudice requirement. Accordingly, Petitioner is denied habeas relief on this claim.

### ii. Failure to Call Sharif Whitlock at Trial

Petitioner next claims that his counsel was ineffective by not calling Sharif Whitlock as a witness at trial in support of a theory of third-party guilt. Petitioner alleges, without support, that Whitlock would have testified in accordance with his police-recorded statement that he was present when the crime

27

was committed and "that he and others were armed and began shooting at each other after the first shot rang out." ECF No. 1, at 12. Petitioner argues that "[t]his is significant because the victim in this case was shot and it could have potentially . . . been a bullet from Whitlock's gun or the others along with him that could have caused the death of the victim." Id.

Based on the Court's review of this record, this claim is unexhausted.[5] Section 2254(b)(1)(A) requires that a state prisoner "exhaust[] the remedies available in the courts of the State" before seeking habeas relief in federal court. A claim is exhausted once it has been "fairly presented" at each level of established state court review. Holloway v. Horn, 355 F.3d 707, 714 (3d Cir. 2004). Petitioner did not claim that his counsel was ineffective for not calling Whitlock at any level of state review and instead brought a similar claim that his counsel was ineffective by not arguing that Whitlock was the actual perpetrator of the crime. ECF No. 7-24, at 36; ECF No. 7-28, at 36.

Thus, the Court is presented with a "mixed petition." When

---

[5] Respondents did not raise exhaustion as a defense in their Answer. A district court may, however, raise the issue of exhaustion sua sponte. See Granberry v. Greer, 481 U.S. 129, 133 (1987); Mastrosimone v. N.J. Dep't of Corrs., No. 14-1710, 2015 WL 4638246, at *3 (D.N.J. Aug. 4, 2015); Nicoloudakis v. Bocchini, No. 13-2009, 2015 WL 4392638, at *4 (D.N.J. July 15, 2015).

confronted with a mixed petition, a district court has four options: "(1) stay the petition pending the outcome of state proceedings; (2) allow the petitioner to delete the unexhausted claims and proceed on the exhausted claims; (3) dismiss the petition without prejudice as unexhausted; or (4) deny the unexhausted claims on the merits under 28 U.S.C. § 2254(b)(2)." Barr v. Warden of N.J. State Prison, No. 15-5797, 2016 WL 589675, at *4 (D.N.J. Feb. 11, 2016); see also Mahoney v. Bostel, 366 F. App'x 368, 371 (3d Cir. 2010). The Court will deny this unexhausted claim on the merits.

Petitioner's counsel cannot be found ineffective for not calling Whitlock at trial because Whitlock did in fact testify at trial as one of the State's witnesses. ECF No. 7-10, at 29-69. Whitlock testified that while there were a number of people shooting at the time, Petitioner was the one that shot the victim in the head. Id. at 31-33. And, defense counsel cross-examined him, specifically asking questions regarding the number of people that were shooting at the time. Id. at 54-56. Accordingly, this claim is denied.

### iii. Failure to Advise Petitioner of his Right to Testify

Finally, Petitioner claims that his counsel was ineffective because he did not discuss with Petitioner "the ramifications of either testifying or not testifying on his own behalf." ECF No.

1, at 14.  Petitioner asserts that during trial, the trial court asked whether Petitioner had been advised of his right to testify and he answered in the affirmative. Id.  However, Petitioner claims the trial court never determined whether his choice not to testify was knowing and voluntary and that it was not. Id.

Petitioner did not testify at trial.  It appears that due to some confusion over whether or not Pettway would testify, a formal hearing was not held to ensure that Petitioner's decision not to testify was knowing and voluntary. ECF No. 7-11, at 22. Once the trial court realized that nothing had been put on the record regarding Petitioner's right to testify, the following colloquy occurred:

> THE COURT:  I'm sorry.  In light of all the confusion previously, I didn't put on the record that your client does not want to testify.  I mean, you discussed it with him, --
>
> [DEFENSE COUNSEL]:  Yes.
>
> THE COURT: -- correct? Mr. Gilliard?
>
> (Whereupon, the Defendant is nodding his head in the affirmative.)
>
> THE COURT:  He is nodding his head in the affirmative.  Didn't you discuss with him whether or not you want the charge?
>
> [DEFENSE COUNSEL]:  I do want the charge.
>
> THE COURT:  Is that correct, Mr. Gilliard?
>
> MR GILLIARD:  Yes.

> THE COURT:  So he just said to me "yes" and is
> nodding his head.

ECF No. 7-11 at 22-23.

The PCR Court rejected this claim, noting that the decision was strategic and "it was probably a very good decision because the prosecutor would've just harped on all those things that he had going against him and they would not have inured to his benefit by testifying." ECF No. 7-17, at 18.  The Appellate Division agreed and held that the colloquy at trial was sufficient to confirm Petitioner's waiver was knowing and voluntary.

The Appellate Division's decision was not unreasonable. Petitioner clearly indicated at trial that he wished to waive his right to testify and that his counsel had discussed what that waiver meant with him.  That exchange was sufficient to protect Petitioner's rights.  <u>See</u> <u>United States v. Leggett</u>, 162 F.3d 237, 247 (3d Cir. 1998)("As long as it is clear that defense counsel has informed the defendant of the right to testify and the defendant understands that right, a district court has no reason to intervene.").  The voluntariness of Petitioner's decision not to testify is further confirmed by his request for a jury charge on his right not to testify at trial and the presumption of innocence.  The request for that charge demonstrates that Petitioner made a strategic decision and

intended to rely on the presumption of innocence by not testifying at trial. Petitioner cannot now claim that decision was not voluntary.

Moreover, Petitioner has failed to show how he was prejudiced by his counsel's alleged failure to properly advise him on his right to testify — he offers no details of his testimony nor does he even allege that he would have taken the stand. Absent these details, Petitioner is not entitled to any relief on this claim.

### III. CERTIFICATE OF APPEALABILITY

The AEDPA provides that an appeal may not be taken to the court of appeals from a final order in a § 2254 proceeding unless a judge issues a certificate of appealability on the ground that "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court will deny a certificate of appealability because jurists of reason would not find it debatable that dismissal of the Petition is correct.

### IV. CONCLUSION

For the above reasons, the § 2254 habeas petition will be denied and a certificate of appealability will not issue. An appropriate Order follows.

Dated: February 11, 2019          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.